UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY DRUM,

        Plaintiff,

   v.                               **DECISION AND ORDER**
                                            6:18-CV-6526S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.    Plaintiff Anthony Drum brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income benefits under Titles XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed his application with the Social Security Administration on October 21, 2014. Plaintiff alleged disability beginning May 31, 2014, due to bipolar disorder, depressive disorder, learning disability (LD), attention deficit hyperactivity disorder (ADHD) (R. at 14). Plaintiff's application(s) were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On May 2, 2017, ALJ John Costello held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Peter Manzi appeared and testified. (R.[1] at 56-92.) At the time of the hearing, Plaintiff was 21 years old on the application date. (R. at 21, 11.) He has a high school education (with a long history of receiving special education services) and he had no past relevant work. (R. at 21, 13.)

---

[1]Citations to the underlying administrative record are designated as "R."

4. The ALJ considered the case *de novo* and, on July 6, 2017, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 11.) Plaintiff filed a response on April 10, 2019 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is **denied**, and Defendant's motion is **granted**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]The ALJ's July 6, 2017, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

3

> fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date October 21, 2014. (R. at 13.) At step two, the ALJ found that Plaintiff has the following severe impairment: bipolar disorder, depressive disorder, learning disability, attention deficit hyperactivity disorder. (R. at 14.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform full range of work at all exertional levels, but with nonexertional limitations that plaintiff can only perform work that involves one to two-step instruction tasks; he can have no interaction with the general public and only occasional contact with co-workers and supervisors. (R. at 17.)

13. At step four, the ALJ found Plaintiff had no past relevant work. (R. at 21.) At step five, the ALJ posed hypotheticals to the vocational expert for a claimant similar in age, education, lack of work experience, and RFC as plaintiff. The expert opines that such a claimant could performs such occupations as packager or furniture cleaner (medium unskilled work). The ALJ thus found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 22.) Accordingly, the ALJ found that Plaintiff is not disabled. Id.

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to evaluate additional functional limitations due to his LD beyond those noted in the RFC (limiting plaintiff to one to two-step tasks) (No. 7-1 at 1, 11-18.) He contends that the ALJ failed to evaluate plaintiff's subjective complaints. (No. 7-1 at 1, 18-23.) Next, plaintiff asserts that the ALJ did not properly evaluate the medical opinions of record, with the ALJ giving great weight to the consultative psychologist examiner but giving little weight to plaintiff's mental health counselor. (No. 7-1 at 19-20.) Defendant Commissioner counters that substantial evidence supports the ALJ's findings and the ALJ correctly weighed the opinion evidence in record. (No. 11-1 at 15-19, 19-23.) For the reasons that follow, this argument is **DENIED**.

15. Plaintiff faults the ALJ for relying upon plaintiff's optimism and desire to work to denigrate his subjective complaints that preclude working and using his diligence attempting to find work against him. (No. 7-1 at 12, 13; cf. R. at 19, 18.) This fails to recognize the complete record because plaintiff points out his inability to keep a job because of struggles with maintaining pace. (No. 7-1 at 14.)

16. Defendant counters that the medical record shows that plaintiff's medication and therapy improved his symptoms. (No. 11-1 at 16.) Plaintiff's acknowledged daily activities (bowling in a league, performing household chores, traveling, seeking work) undermine his complaints. (No. 11-1 at 16-17.) The ALJ did not mischaracterize plaintiff's record by stating that he graduated from high school and worked several jobs. (No. 11-1 at 18.) Defendant points out the ALJ considered plaintiff's contention that he could not perform multiple step tasks and needed further and repeated instructions and credited it, ultimately including that limitation in the RFC. (No. 11-1 at 18; R. at 18, 21, 17.)

17. The ALJ did not rely solely on plaintiff's willingness to work or his participation in a bowling league to diminish his subjective complaints. The ALJ found that plaintiff's statements were not entirely consistent with the medical and other evidence in the record. (R. at 18.)

18. Plaintiff next contends that the ALJ mischaracterize the record by heightening the facts that he graduated from high school and worked several jobs. (No. 7-1 at 15; R. at 18.) Plaintiff points out that he graduated after receiving numerous special education accommodations (No. 7-1 at 15) but the ALJ also acknowledged that plaintiff received extra services, attended and earned a BOCES certificate (R. at 18). The ALJ also noted plaintiff's intellectual testing during his education. (R. at 18.) As for plaintiff's

6

employment history, he constantly lost jobs because he could not maintain the desired pace and could not follow instructions and multiple tasks. (No. 7-1 at 18.)

19.     Plaintiff worked briefly as a dishwasher at a nursing home. (R. at 69-70, 516.) He also briefly worked as a dishwasher at a pizzeria, but plaintiff was fired because he kept asking questions about his tasks. (R. at 80-82, 532; No. 7-1 at 15-16.) Plaintiff became overwhelmed when he was given multiple tasks at the pizzeria, he needed to be reminded of the instructions which frustrated his supervisor. (R. at 15, 18, 81.) He also was an intern in automotive business (R. at 18, 19). Plaintiff then worked on a farm for one week, losing that job because he was not fast enough in milking cows (R. at 526, 80; No. 7-1 at 15). Plaintiff received job assistance from ACCES-VR. (R. at 18, 19, 20, 515-41.)

20.     The vocational expert was asked if a hypothetical claimant required frequent reminders of instructions (once every hour) would make that claimant unemployable in competitive employment setting. (R. at 90; No. 7-1 at 16; see No. 13 at 3.)

21.     Plaintiff argues that an audiologist in May 2005 opined that, due to plaintiff's auditory processing disorder, he had deficits with poor memory, "poor auditory figure ground and distractibility," with confusion by instructions. (R. at 362; No. 7-1 at 16.) The ALJ included this evidence as part of plaintiff's treatment history that occurred prior to the onset date of May 2014. (R. at 18.)

22.     While defendant argues that the ALJ factored this limitation in the RFC (No. 11-1 at 18-19), plaintiff's inability to stay employed arises from his problems in understanding instructions.

23. The audiology report from 2005 may explain plaintiff's difficulties with understanding and comprehending instructions, but the medical record does not reveal any follow up with this condition or whether it continued or worsened from the 2014 onset date.

24. Next, plaintiff objects to the weight the ALJ gave to the consultative psychologist as compared with plaintiff's treating counselor. The ALJ gave great weight to Dr. Christine Ransom, Ph.D. (R. at 425-28, 19, 20), who opined in March 2015 that plaintiff showed no evidence of difficulty following and understanding simple instructions, performing simple tasks independently, learning simple tasks, or performing complex tasks. (R. at 427.)

25. Plaintiff contends that the ALJ erred in relying upon Dr. Ransom's 2015 opinion because it became stale and did not reflect treatment for depression that he had in 2016. (No. 7-1 at 19-20.) The opinion, however, was not automatically stale merely because it was rendered almost two years prior to the administrative hearing, Kidd v. Comm'r of Soc. Sec., No. 18CV217, 2019 WL 1260750, at *3, 4 (W.D.N.Y. Mar. 19, 2019) (Geraci, C.J.) (see No. 11-1 at 22). Plaintiff's condition did not significantly deteriorate over the two years between the 2015 evaluation and the 2017 hearing to make Dr. Ransom's opinion stale, Kidd, supra, 2019 WL 1260750, at *4. (See No. 11-1 at 22.)

26. Dr. Ransom's opinion also confirms that plaintiff can perform simple tasks. Plaintiff has not established that his diagnosed depression in 2016 affected his job prospects. The ALJ as well noted that plaintiff's medication was adjusted, and plaintiff reported doing better under the amended regime. (R. at 20, 544, 556.)

27. Plaintiff's counselor, Jeremy Hunt (misidentified by the ALJ, R. at 20, and on the first page of the Treating Medical Source Statement, R. at 589, 593, as Jeremy Kent), found that plaintiff could not find full-time work because he was "hesitant to engage in full time work, seeks part-time to start." (R. at 589.) The ALJ gave this opinion little weight. (R. at 20.) Despite plaintiff's objection, the ALJ correctly assessed Mr. Hunt's opinion. The above statement seems more about plaintiff's ability to obtain full-time as opposed to part-time work rather than any difficulty by plaintiff in working at all. As the ALJ found, plaintiff worked or sought employment. (R. at 20; No. 11-1 at 21). Plaintiff cites to portions of Mr. Hunt's notes that plaintiff expressed his concern about working at all. (No. 13 at 7.) Review of those notes (R. at 552, 555, 561) reveals plaintiff discussing job applications and assistance from ARC he received without noting any frustration or abandonment of the job search; the ALJ acknowledged that plaintiff was using ACCES-VR (R. at 20).

28. Mr. Hunt then found that plaintiff would miss about three days a month for family emergencies and medical appointments. (R. at 593.) He did not attribute the medical appointments to treatments for plaintiff or specify that they were for plaintiff's claimed impairments. Plaintiff told Mr. Hunt that he had to assist his disabled mother (R. at 548) and plaintiff later testified that he assisted his disabled mother with household chores (R. at 69). One appointment with Mr. Hunt followed plaintiff's mother being in the hospital (R. at 554). This may have led Mr. Hunt to conclude the times plaintiff would be away from work for family emergencies. But these emergencies do not appear to arise from plaintiff's condition.

29. Therefore, the ALJ correctly assessed Mr. Hunt's opinion.

30.     In sum, there is substantial evidence in the record to support the ALJ's findings and the conclusion that plaintiff was not disabled.

For the foregoing reasons, this Court finds that substantial evidence in this record supports the ALJ's disability determination. Remand is therefore **not warranted**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the decision of Defendant Commissioner is AFFIRMED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     May 4, 2020
           Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge